We move to the second case this morning, Thorne v. MemberSelect Insurance Company. Mr. Thorne? Thank you, Your Honor. May it please the Court, this case holds that it is not necessary to have any opinion evidence to prosecute a property damage claim under Indiana law. Good morning, Your Honors. My name is Edward Hearn. I represent MemberSelect Insurance Company in this case. It was a case for property damage under a homeowner's policy. MemberSelect was the defendant in the trial court. Mr. Thorne, the owner of the property and the named insured under the policy, was the plaintiff. The case proceeded to trial in June of 2016 and resulted in a verdict in favor of the plaintiff of $87,000. We have appealed that decision, and I believe there are really two issues in the case. And the first one is the one that I mentioned just a moment ago, which I think is the most important, and that is that there was no opinion testimony offered at the trial regarding the value of the property, which was the home that was burned to the ground. Did Mr. Thorne offer his opinion? He did not, Your Honor. But he testified to what he bought it for, he testified to what he refinanced it for, and whether he calls it an opinion or just testifies to it, isn't that qualified as an opinion? I don't think so. I think it would be a good start for a foundation to provide the opinion, because the case law says under Indiana law, now, by the way, I think this is an open question in federal court, but in state court the case law does say that the owner of a piece of property is permitted to testify regarding the value, but it must have a proper foundation. And so there are some cases in Indiana where owners did attempt to testify regarding the value of a piece of real property, and the opinion was ultimately rejected. The Witt case is the case that we cited to the court where that occurred. So I think to answer your question. In the brief you suggest that there are no Indiana cases allowing recovery with as little evidence about the property value as Mr. Thorne presented here. But are you able to point to any case law requiring, requiring the sort of testimony that you think was lacking? In other words, an appraisal or expert opinion as to current value. Yes, Judge Rovner. The Witt case that I just mentioned, that was a case tried in the Lake Superior court, and the issue was the value of the property, and the trial judge heard testimony from the current owner and a former owner regarding their respective opinions regarding the value of the property, and ultimately struck those opinions, finding that they were, did not have a sufficient foundation, and then entered a directed verdict in favor, against the property owner. So I think the Witt case. Sale price and is not sufficient evidence? I would say a sale price might be sufficient evidence if it happened right around the time of the loss, Your Honor. Well, this was a year or two, several years. It was multiple years, Your Honor. The fire was in 2009. The owner purchased the property in 2001. There was some testimony regarding a refinance, excuse me, he purchased it in 2002. There was some testimony of a refinance in 2004, but importantly, Your Honor, there was a lot of testimony regarding what happened to the real estate market in 2009, or excuse me, 2008, in this trial. Well, nevertheless, I mean, you didn't offer any evidence about that, did you, about there was no valid relationship between the sale price and the refinancing? I think I would have sustained the plaintiff's burden if I had done that, because while this testimony is sufficient to start the foundation for the plaintiff to offer his opinion, it was never offered. If Mr. Thorne, at least if the case was in state court, if Mr. Thorne had said, and based upon what my brother bought it for, what I bought it for, my refinance, I think at the time of the loss my home was worth X, that would have sustained the plaintiff's burden, as I say, in state court. There's an open issue about whether or not I cited the case from Wisconsin that suggests that might not be enough in federal court because the opinion rules still apply and would supplant the Indiana case law. But regardless, that issue is not in this case because there was no opinion offered. Did you argue that to the jury, that there's no valid or adequate evidence as to value? Absolutely. I did argue that. And the jury rejected that? And that's right. They did, and I think that was there because there was insufficient evidence to support. You know, testimony regarding the price is a fact. Testimony regarding. . . You seem to take issue. . . No, I'm sorry. Itemize the damages award. You could have requested an instruction requiring itemized damages, couldn't you have? We didn't really take an issue with that. I know the plaintiff suggests that what we're saying is that because there wasn't testimony of the exact number, that's not really what we're saying. And to answer your question, we could have asked for that, we did not ask for that, but that's not really the issue that we're making. The argument that we're making is that the plaintiff was required to provide some opinion evidence regarding the value of the property at the time of the loss, and that was not done. Now you're not arguing that he's not entitled to any damages. Yes. You're arguing that he's not entitled to any damages? Because he didn't prove it, Your Honor. He had testimony regarding what he purchased the property for eight years, seven years before. There was intervening testimony regarding a change in the market during that time. I think if he would have testified. Well, then he also had a refinancing, too. Yes, but that was in 2004. So it's still five years before the fire. You've got testimony from Mr. Thorne himself. Not the quibble, but it's four years. It was February 2008 it burned down. Okay. All right. But I guess the intervening point is, the intervening fact that's important, though, is the testimony regarding the change in the real estate market that occurred, that Mr. Thorne admitted, agreed, had affected property values in northwest Indiana. And I think if he would have provided an opinion, either himself or from a real estate appraiser or estimator, we're not saying that if the. Well, how did the sale price come into evidence then? What did that show? He purchased it for $75,000, Your Honor. Well, if you say that he didn't put any evidence of what the value of the house is, but you let that evidence come in, then what's the difference? Yeah, and I started to explain this a moment ago. I think the testimony regarding the price is a fact. You know, I paid X. But what is required under the Witt case and all of the other cases that we've cited, there's some sort of opinion testimony regarding value. And so value is an opinion. So it's not a fact. Those are two different issues. And I think in order for Mr. Thorne to testify regarding value, things like what he paid for are required to be laid as a foundation. So your argument is if he sold, if he paid $100,000 on one day and the next day the house burned down, but he offered no opinion evidence as to what the value of the house is, that doesn't work? I think that's probably close enough it would work. Well, now we're then saying that you think it was too far away, that the value wasn't correct, so it was too far away. But that's ‑‑ I think, Judge Keeney, I think the testimony regarding the change in the marketplace and the fact that it was purchased, by the way, at the time, it was purchased as a result of a foreclosure sale. There was an intervening refinance. And then a change in the market. But did you offer evidence to show that? Opinion evidence to show that? To show the change in the market? Mr. Thorne, he agreed to that. He agreed there was a change in the market. So I guess what we're saying is ‑‑ So what was the jury missing? Pardon? What more would the jury need under the broad evidence rule to at least ‑‑ An opinion. Well, an opinion, but the word opinion is not there, but isn't he really offering an opinion by saying what he bought it for, what he refinanced it for, acknowledging there was a change in the market in 2008? No, I think he's laying a foundation to offer an opinion, but that's not the opinion. And I think that's the difference that makes the difference in this case. You know, there's also an argument that we've presented in our brief, whether or not the opinion regarding current value is sufficient. That's the discussion about whether or not the policy defines actual cash value. The plaintiff is arguing, and the district court found, that the actual cash value did not mean replacement cost, less depreciation. We think that's an incorrect interpretation of the policy. We think the policy is clear. We've cited the case law from three other jurisdictions with similar language. Actual cash value is not in the ‑‑ But under the broad evidence rule, depreciation can be considered when determining actual cash value, can't it? It can be. What we're saying is the broad evidence rule doesn't apply in this case because actual cash value was defined by the policy according to its terms. In the portion of the policy entitled how losses are settled, the policy explains that we will pay actual cash value at the time of the loss and settlement. This includes a deduction for depreciation. For building structures, it says we'll pay the cost to repair or replace without a deduction for depreciation. So what we're saying is that broad evidence rule in Indiana applies when the policy doesn't define actual cash value. Here the policy did define actual cash value, not in the definition section but according to the terms of the policy where it describes how losses would be settled. And so because of that, beyond just the opinion requirement regarding the value, that would require the plaintiff to introduce evidence regarding the replacement cost, which was not done in this case, and evidence as to depreciation in order to prove the losses that were payable under the policy. So what I started out by saying is there's no opinion in this case regarding value. I think that ends the inquiry and the court doesn't even have to reach the question of whether actual cash value is defined in the policy and that needs to be determined on a replacement cost, less depreciation manner, or under the broad evidence rule. But if you do decide that testimony regarding the cost of the home was sufficient in 2002, then you do have to reach the issue about whether the broad evidence rule applies, and we don't think it does because the policy defines actual cash value. Why did members select denied coverage in the first place? Because they thought it was arson committed by the homeowner. Now we didn't appeal that issue. By the way, we filed a summary judgment in the trial court and the district judge was not the district judge that tried the case, threw out a bad faith claim, but kept the policy claim but issued an order saying I don't know how the jury couldn't find that the plaintiff or his brother didn't have something to do with this fire, but that's for the jury to decide. Now we're not appealing that issue, but that was the reason that the claim was denied originally in addition to the fact that the homeowner was not using the home for his residence at the time. That issue is on appeal. Well, the portion of the policy that specifies that it cover a residence doesn't provide any guidance, it seems to me, as to what it means to occupy a home as a residence. You know, the specifics of that provision are simply intended to clarify that it should be a place for living as opposed to a place of business. But I think the indication in the policy that it has to be used as a residence, and it wasn't being used as a residence by the named insurer, David Thorne, who's the plaintiff in the case, for over eight months. He hadn't resided there for eight months. He testified. So if I went to Florida for eight months and didn't live in my residence, you could deny me coverage? Yes, Judge, and that's why they sell unoccupied owner insurance policies. That's exactly right. If it's not being used, and the reason for that, Your Honor, is there's additional risks. Even if I have my mail there? Even if, you know, someone might be staying there once in a while? Yes, Judge, and the reason for that would be the risks. The policy is written for a premium assuming that the home is occupied, and that's why it says it must be used as a residence. So if it's not being used as a residence, then coverage could be denied, and that's why there's a whole book of business for unoccupied homes, and I see that my time is up. You can finish to answer your question. I was finished, but it looked like I had one question. Well, wasn't the jury properly instructed on residence? Ultimately, isn't that a jury question? On the definition of residence, I think they were properly instructed on the definition of residence. The issue was the policy says that it must be used as a residence, and whether or not there was any evidence that it was being used as a residence at the time of the loss, our position is that there wasn't, and by the named insured, by the way, and that would be the plaintiff, and he hadn't stayed there for over eight months. He testified that he was visiting his home multiple times. Thank you, Your Honor. Thank you, Mr. Arnn. Mr. Viss. May it please the Court, my name is Nathan Viss, and I represent the appellee, David Thorne. This, Your Honors, is a case of common sense. It's a case of whether or not we allow a jury to assess the facts that they receive, to digest them, and then, according to the broad evidence rule, to deduce from that a logical estimate of damages, and that's to quote from the broad evidence rule directly. And my client contends that both the jury- Your Honor, if you could repeat, I did not catch the first part of that. Oh, I'm sorry. Why wasn't there any evidence submitted at trial as to the current value of the home at the time of the fire? Well, Your Honor, for a couple different reasons. One of the things, it's not up on appeal. It was not preserved, but prior to trial, there was an effort to submit to the court evidence of a reconstruction cost. However, the opposing side made the claim that they never received it during the discovery process. The discovery process was prior to my entrance to the case. We believed our record showed that it did, but the court did not. But even beyond that, Your Honor, we believe that my client did tender evidence to the jury sufficient for them to assess the condition of the home at the time of the fire in 2008. They saw pictures of the home. They heard testimony, what was in the contents of the home. In addition to that, Your Honor, as we take a look at the broad evidence rule, the broad evidence rule does not specifically limit the facts that the fact finder is going to assess to the date that the fire occurred. Rather, as we take a look at the broad evidence rule, it's a wide variety of things. It says the original cost of the property. We all know that the original cost of the property is not going to be the day of the destruction. And that's something that they considered. And it's a variety of things that an appraiser would consider that the jury can't consider. And that's what was introduced in this case. Well, under the broad evidence rule, both parties are entitled to introduce evidence of the value. Did member select introduce any depreciation value evidence? No, Your Honor. And actually, as I've reviewed again the trial evidence from last summer, there was no evidence of depreciation that was offered. And it's been tendered to this court that there was a lot of discussion that occurred before the jury as to the downfall of the economy in 2008. And actually, the only evidence that occurred in discussion that occurred of the downfall of the economy in 2008 occurred during member select's closing argument to the jury, at which point in time it was referenced that there had been a downfall in the economy. Now, notwithstanding that aside, that's also something that I want to have a conversation with the court about today, is that it is clear in the state of Indiana, it is clear in this circuit, that the jury takes into the jury box that they are sitting in, as well as back into the jury room, their life experiences, their common sense. They were instructed in that. In Jury Instruction 10 in this case, that is the state of Indiana law that a jury takes into that seat, their common experiences as they're assessing the facts. Well, how could they have done that in this case? As the judge pointed out earlier, my client purchased the property in 2002. How did he do it? He utilized an FHA loan. Anyone that has purchased a house knows the process that one would go through to get an FHA loan, that there's an appraisal process. My client gave testimony that in 2004, not only did he refinance his mortgage, but at the same time he obtained an additional $20,000 line of credit. Again, what does the common sense of a jury enable them to do to assess that a bank's not going to issue money unless there's the collateral that's backing it? Again, supporting the basis of the value that my client had in his home. Now, I'd like to talk through four points that I think are important that are in relevance to this case. And perhaps in the court, please tell me if we should move on from this. But the first question that I think we need to address is whether or not this policy that Member Select has touted actually defines actual cash value. The district court clearly enunciated that nowhere in the policy did they find how actual cash value is supposed to be defined and or calculated. In actuality, what the lower court says is it's not in there. Well, Member Select says it's implicit. They acknowledge it's not specifically defined. But they say you can wend your way through this and imply what it means. Your Honor, again, this is up for review on de novo. But my client would tend to believe that both the six jurors as well as the lower court district judge are reasonable people that were able to review this contract and not find it in there. Specifically, pages 6 and 7 of the lower court's opinion in January of 2017, the lower court judge specifically cites that the policy language quoted above says defendant will pay the cost to repair or replace the damaged part with the equivalent construction. However, if you choose not to repair or replace the damaged property, then settlement is on an actual cash value basis, but doesn't describe how actual cash value basis should be found. In addition, Your Honor, turn your attention to page 10, paragraph 1. Wait a minute. I think something's missing or maybe I'm missing something. I think it is explicit that if property is not replaced, settlement is on an actual cash value basis with a deduction for depreciation. At the very least, that would tell us that actual cash value has to be calculated with a depreciation deducted, doesn't it? Your Honor, and I think you're right to that extent. What this policy tells us, and my client does not disagree with, is that there is a difference between replacement cost and actual cash value. And we would agree that actual cash value is less than replacement cost, and it should be. As Indiana courts have said, starting in 1982, actual cash value is indemnity, not to put the person that has made the loss in a better position, but to make him whole for that which he has actually lost. Now, to your point, Your Honor, it does state that actual cash value in some spots, this includes depreciation. But as well, if we turn our attention to page 10 of the policy, at the very top right, the second column, it defines actual cash value as not including depreciation. And furthermore, if we turn our attention to paragraph 1 on page 10, there's a conjunction that is so important. Member select says here, we make a cash settlement or take all or part of the damaged property at its appraised or agreed upon value, or we repair, rebuild, or replace the damaged property as set forth below. As the district court found nowhere is there a specific definition of actual cash value, and in addition thereto, at some points in this policy, it reflects and discusses that it should be less depreciation. At other times, it does not. Notwithstanding that, again, my client would contend to the court that the district court was accurate when it said as part of an actual cash value determination, using the broad evidence rule, the jury can consider depreciation. And at times, they should, so that the person who has suffered the loss is not put in a better position than they would have been in. Is the word depreciation anywhere in the broad evidence rule instruction? Your Honor, I'm going to read the broad evidence rule. Well, not the rule, but the instruction that was given on it. No, not in the instruction. It was not, Your Honor. The instruction that was given to the court or that was given to the jury basically stated in essence to provide to my client the damages that he otherwise would have received pursuant to the policy. There was no mention of depreciation. There was no mention of that that I recall in closing argument or during the course of the conversation across examination or direct examination of my client, and it was not specifically requested of the jury that they consider it. Rather, it was to make my client whole and not to put him in a better position than he otherwise would have been in. Did members select tender and alternative instruction that included depreciation? Your Honor, I do not recall one, nor do I recall any argumentation at any time. And in conjunction therewith, as we've also pointed out to the court, the specific jury instruction as well as the portion that the jury was to fill out if they found an award for my client, it was a joint venture between the parties to submit to the court that did not parcel out personal property and did not parcel out what the loss was to the real property. So to come back at this point in time and say that because we can't identify with specificity. You submitted a joint instruction that required the jury to say how they arrived at the figure. Correct. All they were to do is arrive at one figure. They did not parcel it out. And now what members select desires to do is to say that because we don't know exactly how they got to that number, we should be allowed to utilize that in our decision for a joint number to say there's no specificity here and the jury was obviously speculating. You may have already addressed this, but there's a how losses are settled section that says if you decide not to repair or replace a damaged property with equivalent construction and so on and so forth, settlement would be on an actual cash value basis. This includes a deduction for depreciation. How does that apply? Maybe you've already discussed how that does not apply. Yes, Your Honor. The way that it applies is starting in 1982 in September and December of 1982, the Court of Appeals in Indiana and subsequently the Supreme Court addressed the lineage of actual cash value and what should be applied to damages that are offered. And what the Court of Appeals and what the Supreme Court stated in those cases is that actual cash value is to indemnify the person, to put them in the position of their loss and not to benefit them as replacement cost has a tendency to do, to give one something in replacement that's better. And as part of that indemnification process of the broad evidence rule, the person that is giving the damages as to what they lost and the jury can assess whether or not depreciation is part of that. So you're saying that the broad evidence rule overcomes this particular provision? It absolutely takes that into account. And, Your Honor, if you're deterred to Ramsey or to the Travelers case in 1982, they addressed one of the third options out there to assess actual cash value and the courts absolutely state that you may consider it. Now, beyond that, Your Honor, the last thing I'd like to focus on is, and I started by talking about the province of the jury, and this court must assess whether or not there is sufficient evidence for a reasonable juror to find to support the verdict that was offered. And the only way that we overturn it is if there's no sufficient evidence whatsoever. As we pointed out in the briefing, if we take a look at Annie as well as the Ramsey case, is the valuation that the jury afforded within the bounds, the range of evidence. And the answer is absolutely yes. Now, Member Select would tender to you that it is not, but my client testified in the closing minutes of the direct examination that I proffered to him last June. Mr. Thorne, what are you requesting of this jury? What have you lost? He said, I lost my home, my only home, and I want the full policy benefits of $142,000. Now, Member Select claims he offered no basis for it, but as Ramsey tells us, value, after all, is a matter of opinion. In conclusion, the broad evidence rule does not require solely opinion. It puts the jury as an appraiser to assess all the facts and then render a logical formation of a correct estimate of loss. In my client tenders, that's exactly what happened in this case. He's testified as to the fresh underwear, the fresh socks that he found while throwing his home's contents away after it burned down. He's testified as to the repairs that he made to it. He testified to the personal contents, the tools that he stored in the property. Clearly, he set a foundation that was within the province of the jury to assess and then subsequently make a decision. We've talked about how Member Select has claimed that the data wasn't up to date. The data was up to date. He provided testimony as to what it looked at when he was last in the property approximately three weeks prior to the fire. In addition to that, he's also testified as to how he had to tear down the premises. In addition to that, Member Select put on their own adjuster. We put on the adjuster that testified that the property was an absolute loss. As we know by Indiana law, if you find that there's an absolute loss and you find that there is liability on behalf of the person that was to pay, that automatically creates nominal damages. At the end of the day, my client requested $140,000. He was not granted that. He's granted $87,000, and my client is content to rest with that decision of the jury. Thank you. Thank you, counsel. The case will be taken under advisement. Prior to moving to the next case.